NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALIANT CONSULTANTS INC., <br><br>            Plaintiff, <br>v. <br>FBA SUPPORT LLC and BRATISLAV ROZENFELD, <br><br>            Defendants. | Civil Action No.: 2:21-cv-12047 <br><br><br>**OPINION** |
| FBA SUPPORT LLC and BRATISLAV ROZENFELD, <br><br>            Counter-Claimants, <br>v. <br>VALIANT CONSULTANTS INC., <br><br>            Counter-Defendant. | |

**CECCHI, District Judge.**

This matter comes before the Court by way of plaintiff Valiant Consultants Inc.'s ("Plaintiff" or "Valiant") motion to dismiss (ECF No. 11 ("Mot.")) defendants FBA Support LLC ("FBA") and Bratislav Rozenfeld's (collectively, "Defendants") counterclaims (ECF No. 9 at 10–17 ("CC"))[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). After reviewing the submissions made in support of and in opposition to the instant motion (ECF Nos. 13 ("Opp."), 14

---

[1] The Court assumes for the purposes of the instant motion that Steven Meyer ("Meyer") is not being joined as a counter-defendant because: (1) he was not explicitly named as a defendant in any of the counterclaims; and (2) he was not served with the counterclaims (as no summons was issued for him). The Court notes that the proper joinder of Meyer as a counter-defendant would not have affected the Court's rulings, as the counterclaims against Meyer would suffer from the same defects as the counterclaims against Valiant.

("Reply")) and for the reasons set forth below, Valiant's motion is **GRANTED** in part and **DENIED** in part.

I.      BACKGROUND

Valiant allegedly "provides services to business clients operating Amazon stores, including services relating to such clients' drop-shipping and wholesale models." ECF No. 1 at ¶ 10. On October 10, 2019, Valiant entered into a Partnership Agreement (the "Agreement") with FBA, whereby FBA agreed to build wholesale accounts for Valiant's clients. *Id.* ¶ 17; ECF No. 9 at 3, ¶ 17; ECF No. 13-3 ("Partnership Agmt."). The partnership failed, and this dispute followed, with each side blaming the other. Valiant alleges that Defendants misrepresented FBA's capabilities and failed to undertake their obligations. In opposition, Defendants allege that Valiant assigned FBA more work than agreed upon, engaged in dishonest tactics, and failed to provide sufficient support and compensation.

Under the terms of the Agreement, FBA's responsibilities included, but were not limited to, the following: contacting and securing suppliers, "building relationships with supplier[s]," finding and managing products listed in each account, "conducting product research to ensure Valiant only sells good products with good profit margins," sending Valiant invoices to pay for products, providing shipment software, "packing and shipping products that arrive [at FBA's] warehouse to Amazon on behalf of [Valiant]," "setting up the repricer for [Valiant] with the rules to win the buy box," hosting "a reporting platform for [Valiant] to be able to see monthly progress for each store," and, if required, "helping [Valiant] to get ungated for brands or categories." Partnership Agmt. at 2–3.

With regard to accounts, the partners (Valiant and FBA) agreed on the following timeline: to reach $100,000 in sales "with a 25%+ profit margin within a maximum period of twelve (12) months." *Id.* at 3. The "[p]artners agree[d] that each account is targeted at hitting 100k in sales,

and each account will have 300–500 products listed." *Id.* The parties further agreed that "[FBA] shall start working with five (5) accounts per week or twenty (20) accounts per month. This number can be increased by the Partner after setting up a process and system." *Id.* Regarding compensation, Valiant agreed to pay FBA $5,000.00 per account plus a "monthly maintenance fee . . . for 3 virtual assistants." *Id.* Payments to FBA were due no later than the 5th day of every month. Id.

Valiant initiated this matter on June 2, 2021, asserting the following claims against Defendants: fraudulent inducement to enter into a contract, breach of contract, fraudulent misrepresentation, breach of implied covenant of good faith and fair dealing, piercing the corporate veil, unjust enrichment, and violation of the New Jersey Unfair Trade Practices Act. ECF No. 1. In its Complaint, Valiant alleges that FBA and its founder/sole member, Defendant Rozenfeld, failed to fulfill their obligations under the Agreement and made false representations regarding FBA's expertise, performance capacity, and capability to perform certain services, in order to fraudulently induce Valiant into entering the Agreement. *See generally* ECF No. 1.

Defendants filed their Answer to the Complaint on September 9, 2021. ECF No. 9. Therein, Defendants denied most of Plaintiff's allegations and filed eight counterclaims: breach of contract (Count One); breach of implied covenant of good faith and fair dealing (Count Two); fraudulent inducement (Count Three); fraudulent misrepresentation (Count Four); unjust enrichment (Count Five); violation of the New Jersey Unfair Trade Practices Act (Count Six); tortious interference with financial advantage (Count Seven); and aiding a third party with breaching a contract (Count Eight). *See* CC.

In support of their counterclaims, Defendants allege that, "[u]pon the first date of order fulfillment, [] Defendants were told to fulfill orders for 80 stores," and in the following months, Defendants were told to fulfill orders for 200 to 300 stores, which was more than agreed upon in

3

the Agreement. *Id.* ¶¶ 1, 2. Defendants further allege that Valiant: (1) hired three virtual assistants for *all* stores, instead of three *per* store as agreed upon, thus causing bottleneck issues (*id.* ¶¶ 3–4); (2) had clients that "were not qualified to own the online stores in question" (*id.* ¶ 6); (3) failed to pay Defendants for at least three months (*id.* ¶ 7); and (4) added more work than the Agreement specified, in a harassing manner, and without providing additional compensation (*id.* ¶¶ 11–12). Defendants also allege that, "[b]etween March 2020 and July 2020, one of [] Defendants' employees in Europe attempted to steal clients from [] Defendants by speaking directly with Valiant," and "Valiant proceeded to transfer [] Defendants' clients to this individual." *Id.* ¶¶ 8–9.

On October 8, 2021, Valiant filed the instant motion to dismiss under Rule 12(b)(6), generally arguing that Defendants have failed to plead sufficient facts in support of their counterclaims. ECF No. 11-1 ("Mot."). Defendants filed an opposition on October 29, 2021, wherein they argued that the counterclaims are sufficiently pleaded, sought entry of default against Meyer, and requested dismissal of some of Valiant's claims. Opp. Valiant replied on November 3, 2021. Reply.

## II.     LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

4

*Iqbal*, 556 U.S. at 678 (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis:  "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted).

The same legal standard applies when reviewing a motion to dismiss counterclaims. *See U.S. v. Boston Scientific Neuromodulation Corp.*, No. 11-1210, 2014 WL 4402118, at *2 (D.N.J. 2014) ("The standards for a properly pled complaint[ ] by extension apply to counterclaims.") (citing *Cnty. of Hudson v. Janiszewski*, 351 Fed. App'x 662, 667–68 (3d Cir. 2009); *see also Meng v. Du*, No. 19-18118, 2020 WL 4593273, at *2 (D.N.J. Aug. 11, 2020).[2]

### III. MOTION TO DISMISS COUNTERCLAIMS

The Court finds, as explained below, that Defendants have stated only one viable claim for relief:  the unjust enrichment claim under Count Five.  Defendants' remaining counterclaims — breach of contract (Count One); breach of implied covenant of good faith and fair dealing (Count

---

[2] When assessing a motion to dismiss under Rule 12(b)(6), this Court is limited to considering the allegations in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents on which a party's claims are based. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, the Court may consider the Agreement itself when assessing the instant motion to dismiss—even though it was attached to Defendants' opposition brief and not their Answer—because it is an undisputedly authentic document on which Defendants' counterclaims are based. *See id.*; CC; Partnership Agmt.  The Court notes that Plaintiff does not object to the introduction of the Agreement. *See* Reply at 5 (Plaintiff objects to the introduction of exhibits with ECF Nos. 13-4, 13-5, and 13-6, but does not object to the introduction of the Agreement, ECF No. 13-3).

Two); fraudulent inducement (Count Three); fraudulent misrepresentation (Count Four); violation of the New Jersey Unfair Trade Practices Act (Count Six); and tortious interference with financial advantage (Count Seven)— are insufficiently pleaded.  Count Eight, titled "aiding a third party with breaching a contract," is dismissed as non-cognizable.

### a)  Count One:  Breach of Contract

Under Count One, Defendants assert a breach of contract claim, alleging that Valiant breached the Agreement "by exceeding the maximum amount of stores which Defendants/Counterclaimants agreed to process within a given time, by soliciting clients and employees from Defendants/Counterclaimants and by failing to pay the Defendants/Counterclaimants due compensation." CC ¶ 18.  To establish a claim for breach of contract under New Jersey law,[3] a claimant must show:  (1) the existence of a valid contract; (2) a breach of that contract; (3) resulting damages; and (4) that the claimant performed its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).  The first element is satisfied here as Defendants plead the existence of a valid contract, the Agreement. CC ¶ 1.  However, the second, third, and fourth elements are insufficiently pleaded here.

Regarding the second element, "[u]nder New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached." *Potter v. Newkirk*, No. 17-08478, 2020 WL 6144756, at *13 (D.N.J. Oct. 20, 2020) (internal citation and quotations omitted).  Here, although Defendants allege that Valiant breached the Agreement by performing certain actions, they do not identify the specific provisions of the Agreement that were breached as a result of these actions. *See* Answer ¶ 18; *Potter*, 2020 WL 6144756 at *13 (dismissing breach of contract claim because plaintiff failed to identify the provisions of the contract that defendant

---

[3] Both parties agree that New Jersey law is applicable here. *See generally* Mot.; Opp.

6

breached, and only asserted conclusory allegations that defendant breached by performing certain actions). In fact, Defendants concede that they "did not cite to specific paragraphs in the Agreement that were breached." Opp. at 8. Thus, the second element is not met here.

With regard to the third element, there is no specific allegation indicating that Defendants suffered damages as a result of the purported breach of the Agreement. In their factual recitation, Defendants do allege that they "lost a great deal of time, money and have been injured in their reputation *due to the unscrupulous acts of Valiant* and due to the instant action which is frivolous as it is brazen." CC ¶ 14 (emphasis added). However, it is unclear whether the "unscrupulous acts of Valiant" include the purported breach of the Agreement or whether those acts are separate from the purported breach.

Lastly, regarding the fourth element, the breach of contract claim is missing an allegation that Defendants performed their obligations under the Agreement. Although Defendants allege performance in connection with the unjust enrichment claim (Count Five, CC ¶ 28), this allegation was not included by reference into the breach of contract claim under Count One (*see id.* ¶¶ 15–19). Moreover, there are no facts pleaded by Defendants that would allow the Court to infer that FBA fulfilled its obligations under the Agreement. *See generally* CC. As described above, FBA had multiple obligations under the Agreement in building wholesale accounts for Valiant's clients, including: contacting and securing suppliers, finding and managing products, and packing and shipping products that arrive at FBA's warehouse. Partnership Agmt. at 2–3. The counterclaims, as currently pleaded, indicate that FBA was *unable* to fulfill those obligations due to bottleneck issues, customer complaints, and other issues. *See, e.g.*, CC ¶ 4 (Defendants allege that they suffered serious logistics issues as a result of insufficient staffing); *id.* ¶ 10 (Defendants allege that between July and August 2020, they could not continue their business relationship with Valiant). Thus, the fourth element is not satisfied here. *See Rotante v. Franklin Lakes Bd. of Educac.*, No.

13–3380, 2014 WL 6609034, at *7 (D.N.J. Nov. 20, 2014) (plaintiff failed to meet the fourth element because he "fail[ed] to provide any facts which point to the Plaintiff performing his own contractual duties").

Accordingly, Defendants have failed to sufficiently plead a breach of the Agreement, and Count One is dismissed.

      **b)**      **Count Two:  Breach of Implied Covenant of Good Faith**

Under Count Two, Defendants assert that Valiant breached the implied covenant of good faith and fair dealing through their "lack of performance and other material breaches of the contract along with their dishonest and fraudulent acts." CC ¶ 21.  To succeed on a claim for breach of the implied covenant of good faith and fair dealing a claimant must establish that "the opposing party acted in bad faith or with a malicious motive . . . to deny the party some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Summit. Transp. Corp v. Hess Energy Mktg.*, No. 14-5119, 2019 WL 430863, at *12 (D.N.J. Feb. 1, 2019) (quoting *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-33702009, WL 3366464, at *2 (D.N.J. Oct. 16, 2009).  Here, both parties agree that a claimant "must 'allege bad motive in order to assert successfully a claim of breach of the implied covenant of good faith and fair dealing.'" Opp. at 9 (quoting *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 249 (2001).  However, the parties disagree whether Defendants have pleaded sufficient facts in support of this counterclaim. *See* Mot. at 7–8; Opp. at 9; Reply at 3.

The Court finds that Defendants have insufficiently pleaded a breach of the implied covenant of good faith claim.  As a preliminary matter, it is unclear which purported wrongdoing underlies the breach of implied covenant of good faith claim.  It appears that Defendants' claim is based upon the allegation that Valiant transferred FBA's clients to an unnamed individual. Id. ¶¶ 8–9.  However, this allegation alone does not indicate arbitrariness, capriciousness, or malice on

8

behalf of Valiant.  Indeed, Defendants allege throughout their counterclaims that a high number of clients was affecting their performance ability, and thus, the alleged transfer of clients appears to have been made in good faith, absent an allegation of malice, bad faith, or improper motive.  Given that the Court is unable to draw the reasonable inference that Defendants had a bad motive or that they otherwise acted arbitrarily or capriciously in carrying out their contractual obligations, Defendants have insufficiently pleaded a breach of implied covenant of good faith claim.

Additionally, "[u]nder New Jersey law, 'a breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action.'" *CRA, Inc. v. Ozitus Int'l, Inc.*, No. 16-5632, 2017 WL 2779749, at *7 (D.N.J. June 27, 2017) (citing *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013)).  If the factual allegations supporting an implied covenant of good faith are the same as those supporting a breach of contract claim, the former claim will be dismissed as duplicative under Rule 12(b)(6). *CRA, Inc.*, 2017 WL 2779749, at *7; *Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228, 239 (D.N.J. 2011).  Here, it appears that the factual allegations supporting the breach of good faith claim (the purported solicitation/transfer of FBA's clients) are the same as those supporting the breach of contract claim. *Compare* CC ¶ 9 *with* CC ¶ 18.

Therefore, Count Two is dismissed. *See CRA, Inc.*, 2017 WL 2779749, at *7 (dismissing breach of the implied covenant of good faith claim because it is duplicative of breach of contract claim); *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *6–7 (D.N.J. Sept. 4, 2012) (dismissing implied covenant of good faith claim because the claimant "alleged no facts whatsoever to support the theory that Defendants exercised their discretionary price-making authority in bad faith").

9

### c) Counts Three and Four: Fraudulent Inducement and Fraudulent Misrepresentation

Under Count Three, Defendants assert a fraudulent inducement counterclaim, alleging that "Defendants/Counterclaimants were fraudulently induced into executing a contract which would bind them to Plaintiff/Counter-Defendant and force Defendants/Counter-Claimants into preparing more products for more accounts than agreed upon in the Partnership Agreement without just compensation." Answer ¶ 23. Under Count Four, Defendants assert a similar fraudulent misrepresentation claim, alleging that "[t]he number of products and accounts that [] Defendants were responsible for in the Partnership Agreement was fraudulently misrepresented by [] Plaintiff and the extent of the work, compensation and the entire structure of the business itself was not only misrepresented it was also changed by [] Plaintiff/Counter Defendant numerous times . . . ." *Id.* ¶ 26. Plaintiff argues that both Counts should be dismissed under the economic loss doctrine and due to a failure to meet Federal Rule of Civil Procedure 9(b) requirements. Mot. at 8–9. In opposition, Defendants argue that part of their fraud claims survive the economic loss doctrine, but they do not address the Rule 9(b) requirements. *See* Opp. at 10–11.

Under New Jersey law, "[t]he economic loss doctrine prohibits [claimants] from recovering in tort economic losses to which their entitlement only flows from a contract." *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, No. 07-321, 2008 WL 2783339, at *6 (D.N.J. July 16, 2008) (quoting *Bracco Diagnostics Inc. v. Bergan Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J.2002). The doctrine "bars a [claimant] from recovering purely economic losses suffered as a result of the [opposing party's] negligent or otherwise tortious behavior, absent proof that the [opposing party's] conduct caused actual physical harm to a [claimant] or his property." *Capitalplus Equity*, 2008 WL 2783339, at *6 (quoting *Pub. Servs. Enter. Group, Inc. v. Phila. Elec. Co.*, 722 F. Supp. 184, 193 (D.N.J. 1989). The critical issue in determining whether a tort claim can be asserted

alongside a breach of contract claim is "whether the allegedly tortious conduct is extraneous to the contract." *Emerson Radio Corp. v. Orion Sales, Inc.*, No. 95-6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000), *aff'd in part, rev'd in part on other grounds,* 253 F.3d 159 (3d Cir. 2001); *see Gleason v. Norwest Mortgage, Inc.,* 243 F.3d 130, 144 (3d Cir. 2001); *Capitalplus Equity*, 2008 WL 2783339, at *6 ("one divining principle that has been applied by courts in this district is whether the fraud is extrinsic to the underlying contract claim") (citations omitted).

Here, Defendants concede that "there are fraud claims that flow from the contract itself in this case," but argue that "some fraud claims are also separate and distinct from the contract" because the alleged fraudulent misrepresentation "occurred before the contract was written and induced the parties to enter into the Partnership Agreement." Opp. at 10. However, there are no allegations here concerning misrepresentations made by Valiant *before* the Partnership Agreement was entered into, and certainly no allegations that meet the heightened pleading standard under Rule 9(b). *See Frederico*, 507 F.3d at 200 ("Pursuant to Rule 9(b), a [claimant] alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'") (quoting *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir. 2004)).

For example, although Defendants allege in their opposition brief that Meyer "acting on behalf of Valiant . . . induced the Defendant[]s to sign the contract in question with full knowledge that the terms of the agreement were not going to comport to reality," Opp. at 10, there is no such allegation in their counterclaims (*see generally* CC). Any new allegations in the opposition brief, which were not set forth in the Defendants' pleading, cannot be considered by the Court in the context of deciding a Rule 12(b)(6) Motion. *See e.g., Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004) (matters outside the pleadings cannot be considered); *Dongelewicz v. PNC Bank Nat'l Ass'n,* 104 F. App'x 811, 819 n. 4 (3d Cir. 2004) (quoting *Williams v. New Castle*

11

*County*, 970 F.2d 1260, 1266 n. 4 (3d Cir. 1992)) ("'a contention in a brief' 'clearly . . . may not' be used to 'substitute for an allegation in a complaint.'"). As currently pleaded, there is no indication that the fraud claims are extrinsic to the contract at issue, as they rely upon Valiant's performance *after* the Agreement was entered into and its alleged failure to adhere to the Agreement's provisions (particularly the provision regarding the number of accounts assigned to FBA). *See* CC ¶¶ 22–26. Therefore, Counts Three and Four are barred by the economic loss doctrine, and dismissed.

      d)       **Count Five: Unjust Enrichment**

Under Count Five, Defendants allege that they "were not fully compensated" under the Partnership Agreement, and "[a]s a result of the actions of [] Plaintiff, they have been unjustly enriched to the detriment of Defendants/Counter-claimants." CC ¶¶ 28–29. Under New Jersey law, to state a claim for unjust enrichment, a claimant must that allege that: (1) at their expense, (2) the opposing party received a benefit, (3) under circumstances that would make it unjust for the opposing party to retain the benefit without paying for it. *Read v. Profeta*, 397 F. Supp. 3d 597, 643 (D.N.J. 2019) (quoting *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011)). It appears that, here, the unjust enrichment claim is based upon "unpaid invoices" and "a lack of compensation for additional free work." Opp. at 12 (citing CC ¶¶ 5, 7).[4] Although Plaintiff argues that there are insufficient factual allegations to support an unjust enrichment claim, *see* Reply at 3, the Court disagrees.

---

[4] The Court notes that Defendants additionally allege in their opposition brief that Valiant was unjustly enriched "by using Defendant as a scapegoat and thereby safeguarding their own reputation by placing all the blame of the chaos cited in ¶ 3–14 of Defendant's Counterclaims upon [] Defendants and not Plaintiff." Opp. at 12. However, there is no allegation regarding scapegoating in the counterclaims. *See* CC. Accordingly, as explained *supra* Section III(c), the Court cannot consider this allegation when evaluating the pending motion to dismiss.

All three elements are sufficiently pleaded here, as the Court can reasonably infer that: (1) the enrichment at issue (additional work beyond the scope of the Agreement) occurred at Defendants' expense because they lost time and money; (2) Valiant received the benefit of this additional work; and (3) it would be unjust for Valiant to retain the benefit of Defendants' additional work without providing them due compensation. *See* CC ¶¶ 11, 12, 14, 29.

Accordingly, Defendants have stated a claim for unjust enrichment. *See Read*, 397 F. Supp. 3d at 643.

### e)     Count Six:  New Jersey Unfair Trade Practices Act/Consumer Fraud Act

Under Count Six, Defendants assert that Valiant "has violated the New Jersey Unfair Trade Practices Act by engaging in unconscionable business practices with the intent to defraud [] Defendants/Counterclaimants." CC ¶ 31.  The Court interprets Count Six as a claim brought pursuant to the New Jersey Consumer Fraud Act (the "CFA"), not the "Unfair Trade Practices Act" because the Court is not aware of a "separate, applicable, statute entitled the New Jersey Unfair Trade Practices Act . . ." *Fish Kiss LLC v. N. Star Creations, LLC*, No. 17-8193, 2018 WL 3831335, at *11 (D.N.J. Aug. 13, 2018) (construing claim brought under the "New Jersey Unfair Trade Practices Act" as a claim under the CFA); *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 521 (2010) ("The Consumer Fraud Act (CFA or the Act), N.J.S.A. 56:8-1 to-181, provides relief to consumers from 'fraudulent practices in the market place.'") (citing *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11 (2004)).  Indeed, the case cited by both parties in their briefing (Mot. at 10; Opp. at 13) addresses the CFA, not the "Unfair Trade Practices Act." *See Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 496 (D.N.J. 1999).

"To state a cause of action under the NJCFA, a [claimant] must allege: (1) an unlawful practice by the [opposing party]; (2) an ascertainable loss by [claimant]; and (3) a causal nexus between the first two elements-[the opposing party's] allegedly unlawful behavior and the

[claimant's] ascertainable loss." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009) (quoting *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008)).

Both parties agree that Count Six must meet the pleading requirements of Rule 9(b) because it "sound[s] in fraud." Opp. at 10 (quoting *Naporano Iron*, 79 F. Supp. 2d at 496). "Pursuant to Rule 9(b), a [claimant] alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the [opposing party] on notice of the 'precise misconduct with which [it is] charged.'" *Frederico*, 507 F.3d at 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223–24 (3d Cir. 2004)). "To satisfy this standard, the [claimant] must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (citing *Lum*, at 224). Here, Defendants do not plead the date, time, or location of the alleged fraudulent acts. *See* Opp. at 13 (Defendants concede that "the Factual Allegations in the Defendant's Counterclaims do not provide exact times, dates, and places where the NJUPTA[sic] violations took place."). Nevertheless, Defendants argue that the allegations in ¶¶ 1, 2, 6, 8, and 10 provide the requisite substantiation for their CFA claim. Opp. at 14.

The Court finds that none of the cited allegations meet the "stringent pleading restrictions of Rule 9(b)." *Frederico*, 507 F.3d at 200. For example, the first allegation cited, ¶ 1, merely sets forth the date the Agreement was entered into, and does not reference any fraudulent or unconscionable behavior by Valiant. Furthermore, at ¶ 2, Defendants allege that they were instructed to fulfill more orders than agreed upon, but they do not identify which Valiant employee told them to fulfill additional orders, when the first order was placed, and whether this arrangement violated the "process and system" (Partnership Agmt. at 3) for increasing the number of assigned stores. *See Klein v. Gen. Nutrition Companies, Inc.*, 186 F.3d 338, 345 (3d Cir. 1999) (Rule 9(b) is

14

not satisfied if the "complaint fails to attribute the [fraudulent] statement to any specific member of [defendant's] management."); *Cty. of Essex v. Aetna Inc.*, No. 17-13663, 2018 WL 6584920, at *7 (D.N.J. Dec. 13, 2018), *on reconsideration,* No. 17-13663, 2019 WL 1951073 (D.N.J. May 1, 2019) (finding the plaintiff failed to plead with particularity where complaint did not "identify the speaker of [the] allegedly fraudulent statements" and merely attributed the statements to the defendant company).

With regard to the allegation in ¶ 6, Defendants allege that they learned through correspondence with Meyer that clients "were not qualified to own the online stores in question and Valiant's sales associates were performing unconscionable actions in their sales tactics in obtaining these individuals as clients despite their inability to pay." Defendants do not specify when the correspondence with Meyer took place, which clients were unqualified to own online stores, what unconscionable sales tactics Valiant engaged in, and how this caused Defendants an ascertainable loss. Simply put, Defendants' conclusory statements do not provide the requisite substantiation for their fraud allegations. *See* CC ¶¶ 22–26.

Accordingly, Count Seven is dismissed for failure to satisfy Rule 9(b).

  **f)**  **Count Seven:  Tortious Interference with Financial Relations**

Under Count Seven, Defendants assert a tortious interference with financial relations claim. CC ¶¶ 32–33. New Jersey recognizes this cause of action as separate and distinct from tortious interference with an existing contract. *Printing Mart–Morristown v. Sharp Electronics Corp.,* 563 A.2d 31, 36 (N.J.1989). "Rather than proving the existence of a contractual relationship, [claimant] must instead allege facts giving rise to some reasonable expectation of economic advantage." *Slim CD, Inc. v. Heartland Payment Sys., Inc*, No. 06-2256, 2007 WL 2459349, at *3 (D.N.J. Aug. 24, 2007) (citing *Printing Mart*, 563 A.2d at 37). Here, in support of their tortious interference claim, Defendants make just one conclusory statement:  "Plaintiff has tortiously

15

interfered with [] Defendants' ability to gain a financial advantage by both stealing Defendant's/Counterclaimant's clients and by working in secret with one of his employees to achieve that goal." CC ¶ 33.

"[T]o succeed on a claim for tortious interference with prospective economic advantage, a [claimant] must establish that: (1) a claimant has reasonable expectation of an economic benefit; (2) the [opposing party's] knowledge of that expectancy; (3) the [opposing party's] wrongful, intentional interference with that expectancy; (4) in the absence of interference, the reasonable probability that the claimant would have received the anticipated economic benefit; and (5) damages resulting from the [opposing party's] interference." *Slim CD*, 2007 WL 2459349, at *3 (citing *Lucas Industries Inc., v. Kendiesel, Inc.*, 1995 WL 350050 (D.N.J. June 9, 1995); *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 186 (3d Cir. 1992)). "[P]laintiff must allege *specific* prospective economic opportunities, e.g., prospective customers or contracts, that were interfered with by [the opposing party]." *Engineered Framing Sys., Inc. v. Vescom Structures, Inc.*, No. 05-1461, 2005 WL 8174971, at *3 (D.N.J. Nov. 1, 2005) (emphasis added).

Here, the first element of a tortious interference claim is insufficiently pleaded, as Defendants fail to allege which clients Valiant stole and whether they expected an economic benefit from those clients. *See generally* CC; *Printing Mart*, 116 N.J. at 751 ("there must be allegations of fact giving rise to some reasonable expectation of economic advantage . . . A complaint must demonstrate that a plaintiff was in pursuit of business.") (internal quotations and citation omitted). As currently pleaded, there is no indication that the clients Valiant purportedly stole provided any economic commitment to Defendants. *See Med-Metrix, LLC v. Boyce*, No. 17-3400, 2017 WL 5162809, at *3 (D.N.J. Nov. 7, 2017) (dismissing tortious interference claim

because the complaint "fail[ed] to plead specific facts which make plausible the inference that that [the plaintiff] had a reasonable expectation of economic advantage").

Likewise, the fourth element is insufficiently pleaded here because there is no indication that Defendants would have received any economic benefit in the absence of Valiant's interference. *See generally* CC; *Printing Mart*, 116 N.J. at 751 ("A [claimant] must show that if there had been no interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits."). Rather, it appears that, regardless of Valiant's purported interference with some unnamed clients, it was improbable that Defendants would have received any economic benefit, as FBA was allegedly facing logistical issues and lacked the means to properly conduct their business. *See* CC ¶ 10.

Accordingly, Defendants have failed to state a tortious interference claim, and Count Seven is dismissed. *See Engineered Framing Sys.*, 2005 WL 8174971, at *4 (dismissing tortious interference claim for failure to plead a specific prospective economic advantage that was lost as a result of the defendant's actions); *Storis, Inc. v. GERS Retail Sys., Inc.*, No. 94-4400, 1995 WL 337100, at *5 (D.N.J. May 31, 1995) (same).

### g)  Count Eight:  Aiding a Third Party with Breaching a Contract

Under Count Eight, Defendants assert a claim titled "Aiding a Third Party with Breaching a Contract." CC ¶ 34. However, the Court is unaware of a standalone claim for "aiding a third party with breaching a contract" under New Jersey or federal law. Although Defendants argue that this is a valid standalone claim under the law, they do not provide any support for this proposition. *See* Opp. at 15. Moreover, Count Eight appears to be duplicative of Count One, which is also based on a breach of contract due to Plaintiff's purported solicitation of FBA's clients.

17

*Compare* CC ¶ 18 *with* CC ¶ 35.  Therefore, as Count Eight is duplicative and non-cognizable, it is dismissed.[5]

        h)      **Request for Entry of Default and Dismissal of Valiant's Claims**

Lastly, to the extent that Defendants seek dismissal of any of Valiant's claims, or an entry of default against any party, they must do so by filing a separate, formal motion. *See* L. Civ. R. 7.1(b)(1) ("all motions, regardless of their complexity and the relief sought, shall be presented and defended in the manner set forth in L. Civ. R. 7.1."). Any requests for dismissal or default contained in Defendants' opposition brief are denied without prejudice at this time, for failure to comply with Local Civil Rule 7.1. *See* L. Civ. R. 7.1(d) ("No application will be heard unless the moving papers and a brief, prepared in accordance with L. Civ. R. 7.2, and proof or acknowledgment of service on all other parties, are filed with the Clerk at least 24 days prior to the noticed motion day.").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff Valiant's motion to dismiss (ECF No. 11) is granted in part and denied in part. The following counterclaims are dismissed: Counts One, Two, Three, Four, Six, Seven, and Eight. Only Count Five may proceed at this time. Additionally, Defendants' request for an entry of default and for dismissal of Plaintiff's claims (ECF No. 108) is denied.

---

[5] Even if Defendant were to bring this cause of action as a tortious interference with contractual relations claim, the Court similarly rejects this allegation. To establish a claim for tortious interference with contractual relations, a claimant must allege intentional interference by an entity who is *not* a party to the contract. *Motise v. Parrish*, 279 F. App'x 149, 152 (3d Cir. 2008) ("[A] party to the contract may not tortiously interfere with the contract."). Because Defendant's counterclaim avers that Plaintiff, a party to the contract, aided in the breach, Plaintiff has failed to state a claim under which relief may be granted.

To the extent that Defendants can cure any of the pleading deficiencies discussed herein, they may file an amended answer with counterclaims within thirty (30) days of the date of this Opinion.   An appropriate Order follows this Opinion.


**Date:** July 18, 2022

s/ Claire C. Cecchi
**HON. CLAIRE C. CECCHI, U.S.D.J.**
