NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VALIANT CONSULTANTS INC., <br><br>      Plaintiff, <br>v. <br><br>FBA SUPPORT LLC and BRATISLAV ROZENFELD, <br><br>      Defendants. <br> FBA SUPPORT LLC and BRATISLAV ROZENFELD, <br><br>      Counter-Claimants, <br>v. <br><br>VALIANT CONSULTANTS INC., <br><br>      Counter-Defendant. | Civil Action No.: 2:21-cv-12047 <br><br> **OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court by way of (1) plaintiff Valiant Consultants Inc.'s ("Plaintiff" or "Valiant") motion to dismiss (ECF No. 46), defendants FBA Support LLC ("FBA") and Bratislav Rozenfeld's (collectively, "Defendants") amended counterclaims (ECF No. 42 at 10-23 ("Am. CC")) pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) Defendants' motion for leave to file a third-party complaint against Steven Meyer (ECF No. 56). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). After reviewing the submissions made in support of and in opposition to the instant motions (ECF Nos. 46-1 ("Pl. Br."), 52 ("Def. Opp."), 56, 58, 59) and for the reasons set forth below, Valiant's motion to dismiss is **GRANTED** in part and **DENIED** in part; and Defendants' motion is **DENIED**.

**I.     BACKGROUND**

As this is Valiant's second motion to dismiss, the parties are familiar with the alleged facts, and, accordingly, the Court incorporates the background provided in its prior Opinion. *See* ECF No. 39 ("Op.") at 2-4. To briefly summarize, Valiant entered into a Partnership Agreement with FBA, whereby FBA agreed to build wholesale accounts for Valiant's clients, who operate Amazon stores. ECF No. 1 at ¶¶ 10, 17; ECF No. 9 at 3, ¶ 17; ECF No. 13-3 (the "Agreement"). The partnership failed, and Valiant filed this lawsuit, alleging that Defendants misrepresented FBA's capabilities and failed to undertake their obligations. *See generally* ECF No. 1. Defendants asserted various counterclaims against Valiant, alleging that Valiant assigned FBA more work than agreed upon, engaged in dishonest tactics, stole clients from FBA, failed to provide sufficient support, and failed to pay for certain services. *See* ECF No. 9.

Valiant then moved to dismiss the original counterclaims (ECF No. 11), which the Court granted in part and denied in part. *See* Op. at 18 (dismissing without prejudice Defendants' counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, fraudulent misrepresentation, violation of the New Jersey Consumer Fraud Act ("CFA"), and tortious interference with financial advantage; dismissing with prejudice Defendants' counterclaim for aiding a third party with breaching a contract; and allowing Defendants' unjust enrichment counterclaim to proceed). Defendants filed an updated answer with amended counterclaims, reasserting the prior claims which were dismissed without prejudice. *See* Am. CC. Thereafter, Valiant moved to dismiss the amended counterclaims. ECF No. 46.

On November 16, 2022, after briefing for the motion to dismiss was completed (ECF Nos. 46-1, 52), Defendants sought leave of the Court to file a third-party complaint against Valiant employee Steven Meyer (ECF No. 56), which Valiant opposed (ECF No. 58).

## II. LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted).

The same legal standard applies when reviewing a motion to dismiss counterclaims. *See U.S. v. Boston Scientific Neuromodulation Corp.*, 2014 WL 4402118, at *2 (D.N.J. 2014) ("The standards for a properly pled complaint[ ] by extension apply to counterclaims.") (citing *Cnty. of Hudson v. Janiszewski*, 351 Fed. App'x 662, 667–68 (3d Cir. 2009); *see also Meng v. Du*, No. 19-18118, 2020 WL 4593273, at *2 (D.N.J. Aug. 11, 2020).

### III. <u>MOTION TO DISMISS COUNTERCLAIMS</u>

The Court finds, as explained below, that Defendants have cured the pleading deficiencies identified in the Prior Opinion with respect to their breach of contract claim (Count One). Additionally, although Valiant asserts that the amended factual allegations now require dismissal of Defendant's unjust enrichment claim (Count Five), the Court once again permits that counterclaim to proceed as an alternative of theory of recovery. However, as to Defendants' remaining counterclaims—breach of implied covenant of good faith and fair dealing (Count Two); fraudulent inducement (Count Three); fraudulent misrepresentation (Count Four); violation of the New Jersey Consumer Fraud Act (Count Six); and tortious interference with financial advantage (Count Seven)—the Court finds that Defendants have not cured the identified deficiencies, and thus they are insufficiently pleaded.[1]

### a) Count One: Breach of Contract

This Court previously dismissed the breach of contract counterclaim, finding that Defendants had insufficiently pleaded the elements of breach and damages under New Jersey law. *See* Op. at 6-8; *see also Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). With respect to breach, Defendants had originally alleged that Valiant exceeded the maximum amount of stores that Defendants agreed to process within a given time and also failed to pay due compensation. However, the Court found that Defendants "d[id] not identify the specific provisions of the Agreement that were breached as a result of these actions," and thus found breach insufficiently pleaded. *Id.* at 6. And as to damages, the Court found it unclear whether the "unscrupulous acts of Valiant" that purportedly cost Defendants "a great deal of time [and] money" were tied to the breach of contract or other claims. *Id.* at 7.

---

[1] While the Court supplements its prior analysis, it incorporates that analysis by reference. *See generally* Op.; *see also Jeferson V. G. v. Decker*, 2020 WL 5835158, at *1 (D.N.J. Sept. 30, 2020).

In the amended counterclaims, Defendants now cite ¶ 5(a) of the Agreement, which provides: "Partner B shall start working with five (5) accounts per week or twenty (20) accounts per month. This number can be increased by the Partner after setting up a process and system." *See* Am. CC ¶¶ 2, 5, 6, 17, 20-23, 31; *see also* Agreement ¶ 5(a). Defendants also refer to ¶ 7, which explains the compensation required to Defendants for each account, and ¶ 8, which stipulates that such compensation is required by the fifth day of each month. *See* Am. CC ¶ 24. Further, Defendants clarified that the "unscrupulous acts of Valiant" which cost Defendants time and money "include[d] Valiant's breach of ¶ 5(a) of the agreement." *Id.* ¶ 20. Given the factual allegations that Valiant purportedly required Defendants to fulfill orders from anywhere from 80 to 150 stores per month (*see, e.g.,* ¶¶ 3, 5, 6, 23) but failed to timely pay for those months in which Valiant assigned more than 100 stores (*see* ¶ 24), it appears Defendants have addressed the flaws in their previously dismissed breach of contract counterclaim.

Nevertheless, Valiant maintains that the deficiencies this Court identified were not cured. *See* Pl. Br. at 6. On breach, Valiant appears to stand by its argument that Defendants failed to identify an applicable section of the Agreement that was breached. *See id.* ("Regarding the second element, defendant [sic] fail to identify the specific provision that was breached …."). Defendants' references to ¶¶ 5(a), 7, and 8, however, clearly belie that argument. With respect to damages, Valiant now seems to concede that Defendants pleaded damages for purportedly missed payments in November and December 2019. *See id.* ("In fact, defendant sole allegations on damages is [sic] limited to alleged 'damages for the 50 stores for which payment was not made by Plaintiffs in November 2019, and the 50 stores for which payment was not made in December 2019 . . . ."). Despite this apparent concession, Valiant nonetheless argues that damages were not properly pleaded for certain *other* breach theories. *See id.* ("Accordingly, Defendants failed to plausibly allege the requirements for breach of contract claim with respect to the alleged breaches of

'soliciting' Defendants' clients or employees, 'mismanaging' representatives or providing 'unqualified' clients."). That is, Valiant appears to suggest that to the extent Defendants rely on breach of contract theories premised on conduct that ¶¶ 5(a), 7, and 8 of the Agreement do not govern—namely Valiant's purported solicitation of Defendants' clients, mismanaging representatives, or providing unqualified clients—Defendants did not adequately plead damages. First, in contrast to Valiant's argument, Defendants' counterclaims allege additional damages beyond the missed payments in November and December 2019. *See, e.g.,* Am. CC ¶¶ 11, 20, 24, 26 (noting other instances of missed payments).  But even putting these aside, Valiant does not identify any authority suggesting that plausibly pleading breach of contract and corresponding damages on one viable theory, but failing to do so on an alternative theory, warrants dismissal altogether. Accordingly, the Court finds Valiant's argument that Defendants have failed to cure their breach of contract pleading deficiencies to be unavailing. Defendants' counterclaim for breach of contract (Count One) will be allowed to proceed.

    **b)  Count Two:  Breach of Implied Covenant of Good Faith**

  The Court previously dismissed Count Two as insufficiently pleaded. Although the pleading did not clearly delineate which alleged wrongdoing was meant to support the implied covenant counterclaim, the Court interpreted Defendants' claim to arise from Valiant's purported "solicitation/transfer of FBA's clients." Opinion at 8-9. The Court then found that Defendants had failed to state a claim because the alleged facts as pleaded could not support an inference of improper motive given Defendants' admission in their pleading that they could not handle the volume of business Valiant assigned. *Id.* And moreover, the alleged facts supporting the implied covenant counterclaim were duplicative of the facts supporting the breach of contract claim. *Id.* (citing *CRA, Inc. v. Ozitus Int'l, Inc.*, No. 16-5632, 2017 WL 2779749, at *7 (D.N.J. June 27,

6

2017) (requiring dismissal where factual allegations supporting breach of implied covenant of good faith form basis for breach of contract claim)).

Having amended their counterclaim, Defendants now argue that they adequately allege Valiant violated the implied covenant of good faith and fair dealing in two ways: (1) by "maliciously targeting [Defendants'] clients" and stealing them; and (2) by "fail[ing] to give Defendants the tools they needed to properly conduct their business." Def. Br. at 9. Valiant responds that Defendants fail to point to any benefit of the Agreement of which they were deprived by the conduct alleged. The Court addresses each in turn.

As to Valiant's alleged "targeting" of Defendants' clients, merely adding that Valiant acted "maliciously" (Am. CC ¶ 15) does not supply sufficient *factual allegations* supporting improper motive. *Compare id.* ("Upon information and belief Valiant and Meyer maliciously and in bad faith and secretly stole numerous clients from FBA"), *with* ECF No. 9 ¶ 8 (alleging Valiant "attempted to steal clients from Defendants"). Such allegations are therefore conclusory and do not cure the deficiencies previously identified by the Court. *See Iqbal*, 556 U.S. at 678; *see also* Am. CC ¶¶ 36 (conclusory allegation of malice). Further, Defendants still do not plausibly allege that Valiant's conduct "denied [Defendants] some *benefit of the bargain* originally intended by the parties, even if that benefit was not an express provision of the contract." *Summit. Transp. Corp v. Hess Energy Mktg.*, 2019 WL 430863, at *12 (D.N.J. Feb. 1, 2019) (emphasis added). Defendants admit that the clients purportedly "stolen" or "transferred" were entirely unrelated to the Agreement. *See* Def. Br. at 9 ("Plaintiff is correct in that these clients were not in any way a part of the agreement between both parties."); *see also* Am. CC ¶ 37. Defendants' claim thus appears unrelated to the parties' agreed-upon bargain and thus does not adequately state a claim. *See Wade v. Kessler Inst.*, 798 A.2d 1251, 1258 (N.J. 2002) (noting a claim for breach of implied covenant of good faith must relate to depriving "the fruits of the contract").

Defendants' second argument that Valiant breached the implied covenant of good faith by "fail[ing] to give Defendants the tools they needed to properly conduct their business" is similarly unavailing. Defendants have not plausibly alleged ill motive or malice with respect to this conduct. *See generally* Am. CC; *see also Wade.*, 798 A.2d at 1260 ("[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive."). And to the extent Defendants are referring to a dispute about whether the Agreement required Valiant to provide three virtual assistants *per store* or for all stores, that relates to an express term of the contract. *See* Am. CC ¶ 7. Allegations about the express terms of the contract, of course, would support breach of contract claims rather than those for breach of the implied covenant of good faith and fair dealing. *See Summit*, 2019 WL 430863, at * 12 ("[A] plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract."). In sum, Defendants' amended Count Two both fails to cure the deficiencies previously identified and presents new inadequacies.

  **c)**   **Counts Three, Four, and Six:  Fraudulent Inducement, Fraudulent Misrepresentation, Violation of New Jersey Consumer Frauds Act (Fraud Claims)**

Addressing the common law fraud claims first (fraudulent inducement and misrepresentation), the Court previously dismissed these because it found those claims impermissibly relied on purported misrepresentations which "occurred *after* the Agreement was entered into" and which concerned "the Agreement's provisions." Op. at 12. Accordingly, the allegations could not survive New Jersey's economic loss doctrine, which "prohibits [claimants] from recovering in tort economic losses to which their entitlement only flows from a contract." *Id.* at 10 (quoting *Capitalplus Equity*, 2008 WL 2783339, at *6).  As the allegations about fraud related to misrepresentations about the terns of the contract, the Court found they were not "extraneous to the contract," *Emerson Radio Corp. v. Orion Sales, Inc.*, No. 95-6455, 2000 WL 49361, at *7

8

(D.N.J. Jan. 10, 2000), and thus failed. Additionally, the Court noted it could not consider factual allegations made in Defendants' brief but not in its pleading. *Id.*

Defendants' subsequent amendments do not alter the Court's prior analysis. The amended fraud counterclaims specifically rely on the fact that Valiant employee Meyer "asserted and promised that more stores would not be assigned to Defendants/ Counterclaimants than specified by the agreement without Partner B (Defendants/ Counterclaimants) agreement to such an increase of stores." Am. CC ¶ 41 (fraudulent inducement claim); *see also id.* ¶ 46 (connecting fraudulent misrepresentation claim to the terms of the Agreement). However, because ¶ 5(a) expressly specifies the amount of stores to be assigned and requires consent to add more, Defendants' claim here is essentially that Meyer committed fraud by making a false promise to uphold the very terms of the Agreement. That conduct is clearly not extraneous to the contract. *See Emerson*, 2000 WL 49361, at *7  Accordingly, the economic loss doctrine still bars these claims.

Even assuming *arguendo* that these fraud allegations are extraneous to the Agreement, Defendants have not sufficiently alleged them under Rule 9(b)'s heightened pleading standard. *See* Fed. R. Civ. P. 9(b); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity."). Under this standard, the claimant must plead "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* Here, however, Defendants once again rely on vague allegations that Meyer "induced the defendants to sign the contract in question with full knowledge that the terms of the agreement were not going to comport to reality." Am. CC ¶ 41. Defendants thus have not sufficiently pleaded the circumstances or substance of Meyer's alleged statement to put Valiant on notice of the "precise misconduct with which [it is] charged." *Frederico*, 507 F.3d at 200.

Defendants' counterclaim for violation of the CFA suffers from these same infirmities. To start, these too rely on an allegation that Valiant engaged in fraud by violating the terms of the Agreement. *See* Am. CC ¶ 55 ("In November 2019, December 2019, and January 2020, Plaintiff fraudulently assigned 150 stores per month to Defendants/Counterclaimants, when only 20 accounts per month were agreed to in the contract and Partner B, who could increase the number of stores per month as per ¶ 5a of the contract, never agreed to such an increase."). Moreover, although the amended claim now specifies *who* made the purported "fraudulent statements," it fails to inject sufficient precision into the other circumstances or substance of the alleged fraudulent statements, beyond conclusory allegations. *See id.* ¶ 54 (alleging Valiant "violated the New Jersey Fraud Act by engaging in unconscionable business practices with the intent to defraud the Defendants"); *id.* ¶¶ 55-60. Accordingly, this claim—like Defendants' fraudulent inducement and fraudulent misrepresentation claims—fails to meet the "stringent pleading restrictions of Rule 9(b)." *Frederico*, 507 F.3d at 200.

    d)  **Count Five:  Unjust Enrichment**

Although the Court previously found Defendants' unjust enrichment counterclaim sufficient to withstand a motion to dismiss, Valiant argues that the amended allegations now undercut the basis upon which the Court previously ruled. Specifically, Valiant asserts that the updated pleading clarifies that the alleged "enrichment was not due to 'additional work beyond the scope of the Agreement,' which served as the basis for the court's non-dismissal of the claim." Pl. Br. at 2. Accordingly, Valiant argues the allegations in Defendants' unjust enrichment counterclaim are now duplicative of the breach of contract claim and should be dismissed.

The Court is not persuaded. It is well established that litigants may proceed on alternative theories of breach of contract and unjust enrichment depending on the validity and terms of the contract at issue. *See, e.g., Caputo v. Nice-Pak Products, Inc.,* 693 A.2d 494, 497 (N.J. Super. App.

10

Div. 1997) (citing *Cartel Capital Corp. v. Fireco,* 81 N.J. 548, 564, 410 A.2d 674 (1980)); *see also Lopez-Negron v. Progressive Cas. Ins. Co.*, 2017 WL 876335, at *14 (N.J. Super. App. Div. Mar. 6, 2017) (allowing breach of contract and unjust enrichment claims to proceed because "these alternative legal theories likewise are best evaluated on a full record after discovery"). At this point, these claims are not inconsistent or duplicative; the merits of each depend on whether and how Defendants' factual allegations are ultimately borne out. If Defendants indeed performed "additional free work [that was] done without proper compensation," Am. CC ¶ 18, that could support an unjust enrichment claim. Similarly, if the assignment of certain accounts was not barred by the Agreement, Defendants still allege they performed services for Valiant for which they were not paid. *See Read v. Profeta*, 397 F. Supp. 3d 597, 643 (D.N.J. 2019) (explaining elements of unjust enrichment). On the other hand, if the conduct alleged ultimately is proven but found to be governed solely by the contract, a breach of contract claim—rather than an unjust enrichment claim—may be more appropriate. In sum, these alternative theories are still viable and Defendants' amended Count Five may proceed.

   e)   **Count Seven:  Tortious Interference with Financial Relations**

The Court dismissed the previous iteration of Defendants' tortious interference counterclaim because it insufficiently pleaded two of its elements—specifically the requirement to establish that the "claimant has a reasonable expectation of an economic benefit" and that a reasonable probability existed that the claimant would have received the anticipated economic benefit in the absence of interference. Op. at 16 (quoting *Slim CD*, 2007 WL 2459349, at *3). Notably, the Court found that Defendants had "fail[ed] to allege which clients Valiant stole." *Id.* Here too, however, the amended counterclaims acknowledge Defendants are not "sure exactly which clients were stolen." Am. CC ¶ 66. Although such speculative pleading may be permissible in cases "where it can be shown that the requisite factual information is peculiarly within

11

the defendant's knowledge or control," *McDermott v. Clondalkin Group, Inc.*, 649 F. App'x 263, 268 (3d Cir. 2016), Defendants have not proffered a valid reason why the specific clients they were purportedly anticipating economic benefits from cannot be identified. Accordingly, the failure to identify any stolen clients prohibits the Court from making a plausible inference that Defendants "had a reasonable expectation of economic advantage" from those clients. *Med-Metrix, LLC v. Boyce*, No. 17-3400, 2017 WL 5162809, at *3 (D.N.J. Nov. 7, 2017).

This analysis applies with similar force to the other challenged element of this claim—namely the likelihood of Defendants actually receiving the anticipated benefit in the absence of Valiant's purported interference. *See Printing Mart*, 116 N.J. at 751 ("A [claimant] must show that if there had been no interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits."). The inability to even identify the purportedly stolen clients makes it implausible to infer Defendants were reasonably likely to receive their business. Moreover, Defendants have not amended their counterclaims to address the Court's prior note that "regardless of Valiant's purported interference with some unnamed clients, it was improbable that Defendants would have received any economic benefit, as FBA was allegedly facing logistical issues and lacked the means to properly conduct their business." Op. at 17; *see also* Am. CC ¶ 17 (retaining allegations from original counterclaims that FBA was unable to handle additional business). Accordingly, Defendants have again failed to state a tortious interference claim, and Count Seven is dismissed. *See Engineered Framing Sys.*, 2005 WL 8174971, at *4 (dismissing tortious interference claim for failure to plead a specific prospective economic advantage that was lost).

## IV.     MOTION TO FILE THIRD-PARTY COMPLAINT AGAINST STEVEN MEYER

Defendants filed a separate motion seeking leave to file a third-party complaint naming Valiant employee Steven Meyer ("Meyer") as a counterclaim defendant. *See* ECF No. 56. Their

proposed amendments do not change the nature of the counterclaims or the factual allegations, they seek merely to name Meyer as a co-defendant to the counterclaims already pleaded. *See id.* Valiant opposed the motion, making various arguments why the impleader should not be permitted, including that Defendants' claims against Mr. Meyer are futile. *See* ECF No. 58 at 10-12. Because the Court has dismissed all counterclaims that implicate Meyer in his individual capacity, the Court agrees with Valiant and denies Defendants' motion.

As an initial matter, Defendants frame their motion under Rule 14(a)(1), which provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1); *see* ECF No. 56 at 4-6. That is, for a Rule 14(a)(1) motion to succeed, the proposed "claim must present a theory upon which the third-party defendant can be liable to the third-party plaintiff under some theory of *secondary liability*, i.e., indemnification, contribution, or some other theory of derivative liability recognized by relevant substantive law." *Ronson v. David S. Talesnick, CPA*, 33 F. Supp. 2d 347, 356–57 (D.N.J. 1999) (emphasis added). Here, however, Defendants claims against Meyer are all direct rather than derivative, and thus Rule 14(a)(1) is inapplicable. *See Altrooz, Inc. v. IDT Domestic Telecom Inc.,* 2022 WL 3722331, at *3 (D.N.J. Feb. 24, 2022).

Defendants' motion fares no better under Rule 13(h). Although Rule 13(h)—in contrast to Rule 14(a)(1)—contemplates amendments for permissive joinder in counterclaims that go beyond secondary liability, courts in this circuit generally deny leave for amendment where it would be futile. *See CBA Envtl. Services, Inc. v. Toll Brothers Inc.*, 403 F. Supp. 3d 403, 410 (D.N.J. 2019) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.2004). As Defendants acknowledge, "[a] 'futile amendment,' which would allow a court to deny a plaintiff leave to amend a complaint, is one that fails to state a claim upon which relief could be granted." ECF No. 56 at 3 (quoting *CBA*, 403 F. Supp. 3d at

403). And as the Court now explains, Defendants' proposed counterclaims would fail to state a claim against Meyer.

The Court begins by reiterating that Defendants' proposed amendments do not alter the substance of the operative counterclaims, they merely seek to add Meyer as a defendant to those already pleaded. With this in mind, Defendants' counterclaims sounding in contract (Counts One and Two) fail against Meyer because he is not a party to the Agreement. *See* Agmt. at 1 (listing Valiant and FBA as parties to the Agreement); *see also FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir.1994) (non-parties to a contract cannot be found liable for breach of a contractual duty); *Power v. Bayonne Bd. of Educ.*, 2017 WL 1536221, at *8 (D.N.J. Apr. 26, 2017) (same for breach of implied covenant of good faith). Similarly, Defendants' quasi-contract claim for unjust enrichment (Count Five) fails to allege any benefit conferred upon Meyer individually. *See Read*, 397 F. Supp. 3d at 643. With respect to the remaining counterclaims, the Court has already determined that they fail to state a claim. *See supra*. Therefore, because Defendants do not allege any additional conduct by Meyer that was not already pleaded (and which is addressed above), joining Meyer to these counts in his individual capacity would be futile as well. Defendants' motion for leave is thus denied.

**V.     CONCLUSION**

For the foregoing reasons, Valiant's motion to dismiss (ECF No. 46) is granted in part and denied in part. The following counterclaims are dismissed: Counts Two, Three, Four, Six, and Seven. Counts One and Five may proceed. Additionally, Defendants' motion for leave to file an amended complaint (ECF No. 56) is denied. An appropriate Order accompanies this Opinion.

**Date:** May ___30th___, 2023         *s/ Claire C. Cecchi*
                                      **HON. CLAIRE C. CECCHI, U.S.D.J.**